Price, J.
If the conceded facts are sufficient aitd the charge of the trial court sound law to govern the jury in deciding on such facts, the plaintiff in error may have been properly punished for very reprehensible conduct. That part of the charge contained in the statement of the case as well as a subsequent paragraph which we will notice, were equivalent to directing a verdict of conviction, inasmuch as there was no dispute as to the facts. There was a verdict of conviction and a sentence upon the verdict, which the circuit court sustained, and thereby must have held that the charge correctly stated the law of the case.
The importance of what is presented as an apparently new doctrine in this state, as well as respect for the opinions of both the lower courts, have been sufficient reasons for giving the questions involved a careful consideration.
The indictment for manslaughter in this case is in the short form authorized by section 7217 of the Revised Statutes, and it charges that “Noah Johnson * * * on the twenty-fifth day of May in the year of our Lord one thousand nine hundred and one, in *63 the county of Scioto, did unlawfully kill one Emory Barrows then and there being, contrary to the form of the statute,” etc.
Prior to the codification of the criminal statutes, manslaughter was thus defined: “That if any person shall unlawfully kill another without malice, either upon a sudden quarrel, or, unintentionally while the slayer is in the commission of some unlawful ’ act, every such person shall be deemed guilty of manslaughter, and on conviction thereof, be punished,” etc. Vol 1, S. & C., 403.
The statute on the subject now is section 6811, Revised Statutes, which reads: “Whoever unlawfully kills another, except as provided in the last three sections is guilty of manslaughter, and shall be imprisoned,” etc. The preceding sections define murder’ in the first and second degrees. But the present section 6811 is not different in substance and meaning from the original section above quoted, and to ascertain the elements of the crime of manslaughter welook to the original as it stood before codification or revision. Therefore, to convict of manslaughter, it is incumbent upon the state to establish that the killing was done “either upon a sudden quarrel, or, unintentionally while the slayer was (is) in the commission of some unlawful act ”
It is clear that from the facts and the instructions given the jury, that Barrows was not killed by Johnson in a quarrel; nor was the killing intentional. Hence, the latter clause of the definition of the crime is the one to which our investigation should be confined. The state was required to show that while the killing was unintentional, it was done by Johnson while he was in the commission of some unlawful act; and the question arises, whether the negligent *64 act or acts of tlie slayer, though no breach of any law, may be sufficient to constitute the unlawful act designated in the statute. Or, is the state required to show that he was in the commission of an act prohibited by law?
At the time of this homicide there was even no ordinance of the village of Scioto regulating the speed or manner of riding bicycles upon its streets. None appears in the record, and we therefore assume there was no such ordinance. And it is not claimed that there was any statute then in force on that subject. What then is the proper construction of the clause “while in commission of some unlawful act?”
The construction which prevailed in the lower courts is found again in a portion of the charge which we quote as the final admonition to the jury: “Now, gentlemen, apply these principles to the case and determine from the evidence introduced upon the trial whether the defendant, Noah Johnson, at the time he struck and killed the decedent, Emory Barrows, wa$ riding his bicycle with gross negligence, and was it such as an ordinarily reasonable and prudent person might and reasonably ought to have foreseen would endanger the lives and safety of others, and be likely to produce fatal injuries; and was such killing the direct, natural and proximate result of such negligence? If the evidence satisfies you beyond a reasonable doubt of all these matters, then your verdict should be that the defendant is guilty of manslaughter as he stands charged in the indictment; otherwise you should acquit him.”
In this language the trial court told the jury that in the defendant’s conduct in the manner of riding the bicycle — its speed without signal of a bell — was, in their judgment, grossly negligent, it was an un *65 law'ful act, and they might find that in such conduct he was committing an unlawful act, and, if it resulted in the death of Barrows, the rider was guilty of manslaughter. And it was left to the jury, and they were directed to determine from the evidence whether or not the acts done were grossly negligent and regardless of the life and safety .of another. If so, to convict.
We have no common law crimes in this state. We think such has been the uniform understanding of the bar, anid the opinion of both the judicial and legislative departments of our commonwealth. Before the trial of this case there was but one other case brought to our attention, where the proposition has been called in question. Weller v. The State of Ohio, 10 Circ. Dec., 381; 19 C. C. R., 166.
But this court has settled the commonly accepted rule in more than one case. In Sutcliffe v. The State, 18 Ohio, 469, 477, Justice Avery, speaking for the court, says: “There is no common law crime in this state, and we therefore look always to the statute to ascertain what is the offense of the prisoner, and what is to be his punishment * * *.” Again on same page: “What is affirmed in this statute of manslaughter of the character which this court is intended to reach, except that the slayer must be in the commission at'the time of some-unlawful act?”
Also on page 477: “It is claimed for the plaintiff in error that there, is no allegation in the count of the unlawful act designated in the statute. It was necessary to allege in the indictment that the person was engaged in the commission of some unlawful act. And this allegation, it appears to the court, is distinctly made in that part of the indictment which *66 charges the prisoner with an assault upon the person killed, and unlawfully discharging and' shooting off at him a loaded gun. This sufficiently declares an unlawful act * * *.”
As before stated, our statute now provides for a shorter form of indictment, but it does not dispense with the ingredients of manslaughter as defined in the former statute.
In Smith v. The State, 12 Ohio St., 466, 469, this court says: “It must be borne in mind that we have no common law offenses in this state. No act or omission, however hurtful or'immoral in its tendencies, is punishable as a crime in Ohio, unless such act or omission is specially enjoined or prohibited by the statute law of the state. It is, therefore, idle to speculate upon the injurious consequences of permitting such conduct to go unpunished, or to regret that our criminal code has not the expansiveness of the common law.”
The same statement of the law was again made in Mitchell v. The State, 42 Ohio St., 383, and other decisions of this court.
We think the same rule abides in many, if not all the other states of the Union whose legislatures have made codes or systems of statutory crimes. It evidently is true of the federal government as settled by repeated decisions of the Supreme Court of the United States. United States v. Worrall, 2 U. S. (2 Dall.), 384; United States v. Hudson and Goodwin, 11 U. S. (7 Cranch), 32; Pennsylvania v. Bridge Co., 54 U. S. (13 How.), 518, and later cases in that court. When our legislature first enacted statutes upon the subject of homicide and defining its different degrees, it did, as to manslaughter, what the state suggests, adopted almost literally the common *67 law definition. Sutcliffe v. The State, 18 Ohio, 469, supra. But when this definition was borrowed and adopted by our legislature, it was adopted, not in part, but as a whole, and the act committed when the unintentional killing occurs, must be a violation of some prohibitory law. The very word “unlawful” in criminal jurisprudence, means that and nothing less. Surely the legislature did not intend to adopt part of the common law description of the offense as -a statutory provision, and leave the other part to the expansiveness of the common law. Yet, that is practically the construction which the lower courts must have placed upon our statute against manslaughter. We assume that the facts show conduct grossly negligent in character. There was no malice and no quarrel between defendant and the deceased. The killing was unintentional. It was manslaughter nevertheless, if the slayer was then in commission of some unlawful act. The jury were told that if in their judgment, the accused was guilty of gross negligence, and a disregard for the lives and safety of others, the state was entitled to a verdict of manslaughter. In considering this rather unusual, if not new construction of the law, we must not forget a few elementary principles of the law of negligence. It (negligence) may consist of acts of omission as well as commission; and what may be mere ordinary negligence under one class of circumstances and conditions, may become gross negligence under other conditions and circumstances. Negligence is the failure to exercise ordinary care. Gross negligence may consist in failure to exercise any or very slight care. There are other definitions, but these are sufficient now for our purpose. So we may truly say that negligence differs only in degree. With this, we cannot overlook what *68 experience has tanght for many years, that what may seem ordinary negligence when contemplated by one mind may be regarded by another as very gross negligence. The inferences drawn from the same facts by different minds may often greatly differ. Hence, when we look to the case as it appeared, in the trial court, we see, that without any rule of conduct prescribed by statute to govern the case, the rule for the first time was to be established by the verdict of the jury and sentence, of the court.
Up to that time the behavior of the defendant had violated no law. It was for the jury to say, under the instructions given, whether the accused had been guilty of gross negligence. If so, although the killing was unintentional and free from malice, it was manslaughter. In England, the home of the common law and where it attained its wonderful growth, and from which we have borrowed to a large extent, it became necessary and was permissible to build up, by the pen of law writers and adjudged cases a system of criminal jurisprudence, and enforce it until parliament would occupy the ground and supplant it. But that country, while so doing, was under no written constitution, and eon post- facto, or retroactive laws might be laid down by the courts or enacted by parliament. Not so in this country where we have a written constitution prohibiting retroactive and eoe post facto legislation. Weeks or months after the negligent acts involved in this case, we have the rule of conduct of the defendant passed upon and defined by a verdict upon the all important and indispensable element of manslaughter based on the facts of the case. It is retroactive in its effect. An act of the legislature attempting to so operate would be promptly held un *69 constitutional. Can we sustain a construction of our statute against manslaughter which will have the same effect?
In our judgment the unlawful act, the commission of which gives color and character to the unintentional killing, is an act prohibited by law, and that such is the natural meaning of the term or clause when used in the parlance of criminal jurisprudence.
Another observation is appropriate here: The uncertainty of the common law. Some principles which are deemed common law in Ohio, are not so regarded in other states, and whgit some of them regard as common law, we do not recognize as such in Ohio. Therefore, the wisdom of enacting a system of penal laws at the beginning of our statehood, and of improving and expanding it as fast as conditions of society required. The growth of such legislation is itself against the holdings of the lower courts. What acts or omissions in early years were harmless, owing to the sparsity of population and character of property and business then owned and conducted, afterAvards, as population increased, and business relations became diversified, became injurious to others; and in other respects the good order of society and the protection of life and property demanded and received appropriate legislation. That department of our state government has kept pace with the wrongs, the vices and immoralities of our social and industrial life. It has gone farther, when occasion demanded, and has made criminal many acts and omissions which before belonged to the field of negligence, as witness, many provisions regarding the management of railroads, factories and mines, and other branches of business where labor is employed. Many acts or omissions to act, which before were subject to *70 the charge of negligence, are made penal by statute. And a consideration of this course of legislation demonstrates that there is no longer a necessity to turn to the common law to find what act or acts it is unlawful to commit.
If the contention of the state in this case is tenable, it is not difficult to see how the criminal dockets in our courts will soon be flooded. The gross negligence of one, may unintentionally cause the death of many. If such negligence is the commission of an unlawful act, the killing of each of the slain becomes a separate crime of manslaughter. And so it would proceed, and the cases multiply according to the judgment of men, as to when the acts of others are or are not grossly negligent.
The position is untenable, and we decide that the judgments of the common pleas and circuit courts are erroneous and must be reversed, and the facts of this case being conceded, as stated herein, the plaintiff; in error is discharged.

Reversed.

Burket, Davis and Shauck, JJ., concur.